UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| AMERICA'S GROWTH CAPITAL, LLC D/B/A AGC PARTNERS<br><br>Plaintiff,<br><br>v.<br><br>PFIP, LLC D/B/A PLANET FITNESS<br><br>Defendant.<br><br>and<br><br>TSG6 L.P.<br><br>Reach and Apply Defendant | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## **AMERICA'S GROWTH CAPITAL, LLC'S COMPLAINT**

### **Introduction**

1.     By and through this action, Plaintiff America's Growth Capital, LLC d/b/a AGC Partners ("AGC Partners") seeks substantial monetary damages, including attorneys' fees and treble damages, arising from PFIP, LLC d/b/a Planet Fitness' ("Planet Fitness" or the "Company") knowing and intentional refusal to pay AGC Partners a fee associated with the sale of Planet Fitness to TSG6 L.P. ("TSG") for $505 million.  In the summer of 2012, Planet Fitness hired AGC Partners to assist in selling the Company.  With Planet Fitness' knowledge, assent and encouragement, AGC Partners aggressively used its business acumen, contacts and goodwill to pursue a sale with forty one (41) strategic and private equity parties, including TSG.  AGC Partners suggested the initial outreach to TSG, who had not been approached in the current process by Planet Fitness or its advisors, and ultimately developed TSG's interest into both

1

initial and revised indications of interest.  Due to AGC Partners' direct efforts, a competitive bidding process ensued, ultimately resulting in Planet Fitness obtaining letters of intent with six proposed purchasers and ultimately, a $505 million sale price.  Despite an undertaking and obligation that Planet Fitness pay AGC Partners a 0.75% fee derived from the sale price of the Company, Planet Fitness has announced that it will not pay AGC Partners the agreed upon fee for its services.  In fact, and as further evidencing Planet Fitness' bad faith, with the exception of the $50,000 non-refundable retainer, Planet Fitness has failed and refused to agree to provide or promise any compensation to AGC Partners for its significant and substantial efforts which directly resulted in the Company being sold for more than half a billion dollars.  For this, Planet Fitness is liable to AGC Partners for substantial money damages.

## Parties

2.	America's Growth Capital, LLC d/b/a AGC Partners is a Delaware limited liability company with a principal place of business in Boston, Massachusetts.  AGC Partners is an emerging growth-focused investment bank which was founded in August, 2003.  Since its inception, AGC Partners has participated in more than 170 investment banking transactions for emerging growth companies.

3.	PFIP, LLC d/b/a Planet Fitness is a limited liability company based in Newington, New Hampshire.  Planet Fitness is one of the United States' largest fitness center brands, owning and/or franchising in excess of 550 fitness centers around the country.

4.	 TSG6 L.P. is, upon information and belief, a Delaware limited partnership with a principal place of business in San Francisco, California.  TSG6 L.P. is the contemplated purchaser of Planet Fitness and is currently holding funds associated with the purchase.  Through

this action AGC Partners does <u>not</u> assert any affirmative claims against TSG6 and TSG6 has been named merely as a reach and apply defendant.

## **Jurisdiction & Venue**

5.  This Court's jurisdiction is founded upon diversity of citizenship pursuant to 28 U.S.C. § 1332(a) because this lawsuit involves citizens of different states with an amount in controversy which exceeds $75,000, exclusive of interest and costs.

6.  Venue in this district is proper in accordance with 28 U.S.C. § 1391(a)(2). Moreover, Annex A to the parties' written contract calls for actions arising from the parties' contractual relationship be resolved in the "state courts of the Commonwealth of Massachusetts sitting in Suffolk County or the United States District Courts in the Commonwealth of Massachusetts."

## **Facts**

7.  In or about mid-July, 2012, Craig Benson, acting as an advisor to Planet Fitness, and David Kirkpatrick, the acting Chief Financial Officer of Planet Fitness, approached AGC Partners and inquired about retaining AGC Partners as its investment banker for the purpose of trying to sell the Company, among other alternatives. In the four years prior to July, 2012, efforts to sell Planet Fitness had failed. By way of example only, prior to engaging AGC Partners, the law firm of Ropes & Gray had provided to Planet Fitness a list of six parties that the firm planned to approach with regard to a potential sale. Ropes & Gray reached out to these potential purchasers but was unsuccessful in generating any interest. In fact, Planet Fitness requested that AGC Partners continue the process with some of the names on the list, from which AGC Partners was able to generate initial interest. Similarly, Planet Fitness' prior investment bankers had failed to bring about a viable sale opportunity.

8.      AGC Partners agreed at the outset of the parties' relationship to begin its outreach efforts based on a good-faith handshake agreement with Planet Fitness' advisor, Craig Benson, and executives, David Kirkpatrick and Richard Moore.  The parties agreed they would soon reduce AGC Partners' retention to writing through an engagement letter.

9.      On August 1, 2012, and at Planet Fitness' direction, insistence and encouragement, AGC Partners approached an initial group of 21 private equity firms to gauge their level of interest in purchasing Planet Fitness.  Between August 2 and August 20, 2012, AGC Partners approached fifteen (15) additional potential party purchasers.  These contacts were made with Planet Fitness' express approval and in most cases were made prior to the parties' written inclusion into Planet Fitness' agreement with AGC Partners.

10.     On August 16, 2012, the parties executed a formal engagement letter.  See Exhibit A (hereinafter referred to as the "Agreement").  The Agreement called for AGC Partners to earn a cash transaction fee equal to 0.75% of the Aggregate Consideration paid in connection with a Strategic Transaction (the "Strategic Transaction Fee") between Planet Fitness and the group of potential purchasers identified on a schedule attached to the Agreement as Exhibit A.

11.     The Agreement defines "Aggregate Consideration" at Paragraph 4 and defines "Strategic Transaction" at Paragraph 3.

12.     In the course of negotiating the Agreement, Planet Fitness' representatives requested that certain potential third party purchasers, specifically TA Associates, Huntsman Gay and Golden Gate, be removed from the list of those entities from whom AGC Partners could earn a Strategic Transaction Fee.  On August 15, 2012, Richard Moore, counsel to Planet Fitness, cited Mike Grondahl's, CEO of Planet Fitness, belief that these players were too small and not legitimate firms with which to pursue a transaction and as a result, AGC Partners agreed to

remove these names from Exhibit A to the Agreement.  In spite of directing AGC Partners to remove these names, Richard Moore directed AGC Partners to pursue all 3 parties for written indications and provided written assurance through electronic mail that these parties and others would be added to the Agreement if any of these parties submitted an offer for the business. Richard Moore specifically stated in writing, "if they do come through and actually become players we will put them back on the list."

13. When executed, Exhibit A to the Agreement listed twenty-six (26) parties in regard to whom AGC Partners would be entitled to a fee in the event of a Strategic Transaction, with the express agreement that additional names would be added to this list once contact or continued contact was approved by the Planet Fitness management team.  AGC Partners relied to its detriment on this representation.

14. Given the number of failed attempts to sell Planet Fitness, many of the names on Exhibit A to the Agreement had previously been introduced to the Company during the 2008 sale process by William Blair, another investment banking firm.  The Agreement made no effort to distinguish between parties who had or had not previously been in discussions with Planet Fitness.  The only parties specifically excluded from the Agreement were Invus and Equinox.  Both of these entities were discussing transactions in the high $300 million, low $400 million range which were far below the deal value Planet Fitness and AGC Partners were hoping to achieve.  Notably, TSG was not an excluded party.

15. On August 24, 2012, AGC Partners requested approval from Planet Fitness' management to reach out to an additional six private equity firms to solicit their potential interest in purchasing Planet Fitness.  These private equity firms included TSG, Cerberus, Gores, Lion, MidOcean, and Prospect.  In response to AGC Partners' suggested approach, Planet Fitness

executive Richard Moore told AGC Partners not to contact Gores and to "hold off" on contacting the additional parties until the parties could meet to discuss the status of the sale process. Prior to AGC Partners' initial contact with TSG on August 27, 2012, there had been no recent dialogue with TSG. Planet Fitness, neither through its own efforts nor those of its counsel at Ropes & Gray or its previous advisors William Blair and Wells Fargo, had reached out to TSG in this process. In fact, on a list of potential targets prepared by Ropes & Gray on July 26, 2012, TSG was listed as a party that would not be contacted. AGC Partners brought the idea of approaching TSG to the forefront of the discussions at a time in which Planet Fitness did want to reach out to any additional parties and, in fact, strongly advocated to focus on getting a deal done solely with the existing contacted parties. AGC Partners was successful in convincing Planet Fitness to approach TSG, which ultimately proved to be the acquiring party at $505 million.

16. Representatives of Planet Fitness and AGC Partners participated in a process update conference call on August 27, 2012. During that conference call, the parties discussed AGC Partners' suggestion that they approach additional potential third party purchasers including TSG, Cerberus, Lion, MidOcean, and Prospect. Planet Fitness representatives Richard Moore and David Kirkpatrick agreed that AGC Partners should contact these additional firms and suggested that AGC Partners make these overtures immediately to further the sale process. It was understood from the conference call with Richard Moore and David Kirkpatrick that Exhibit A of the Agreement would be expanded to include these to-be contacted entities.

17. As authorized by Planet Fitness, on the evening of August 27, 2012, AGC Partners reached out to TSG as well as the additional private equity firms identified during the conference call to attempt to drive interest in the sale process. As had happened with AGC Partners' original outreach in August, 2012, these approaches were undertaken on the basis of a

verbal approval and understanding, here that TSG and the other entities identified during the conference call would be added to Exhibit A to the Agreement and that AGC Partners would receive the full 0.75% Strategic Transaction Fee in the event Planet Fitness was sold to one of these recently contacted private equity companies.  Had AGC Partners been told that it would not receive any fee for its work associated with pursuing a Strategic Transaction with these additional private equity firms, it would not have been willing to pursue a dialog with any of these entities.  To the contrary, AGC Partners' actions were based upon the explicit direction, instruction and agreement of Planet Fitness that it would receive its full fee in the event of a Strategic Transaction with TSG or any of the other third parties contacted on August 27, 2012.

18.     On August 30, 2012, AGC Partners confirmed to Planet Fitness' management <u>in writing</u> that it had, in fact, contacted TSG and the other potential third party private equity buyers on the basis of Planet Fitness' previously provided approval.  Planet Fitness did not respond to AGC Partners writing by suggesting that AGC Partners' engaging with TSG was inconsistent with the parties' understandings or agreement.

19.     After being contacted by AGC Partners on August 27, 2012, TSG immediately engaged with AGC Partners and began discussing a potential purchase opportunity.  AGC Partners' efforts over the next two weeks included, but were not limited to, the following:

    a. On August 30, 2012, AGC Partners provided TSG with AGC-crafted marketing materials including a financial model, a management discussion and analysis and a management presentation.

    b. By September 4, 2012, AGC Partners had facilitated the negotiations of a non-disclosure agreement with TSG to permit TSG to engage in direct discussions with Planet Fitness.

c.  On September 5, 2012, AGC Partners conducted a qualifying discussion with TSG prior to scheduling a meeting between TSG and Planet Fitness' management team.

d.  On September 6, 2012, AGC Partners coordinated a meeting via an online teleconference between TSG and Planet Fitness management.

e.  Beginning on September 7, 2012, AGC Partners began processing TSG's initial request for due diligence materials.

f.  From September 8th through 10th, AGC Partners engaged in a series of discussions with TSG regarding their interest in purchasing Planet Fitness and TSG's plan to submit a bid to purchase the Company by September 14, 2012.

g.  By email dated September 10, 2012, AGC Partners informed Planet Fitness in writing that, based on AGC Partners' efforts, TSG would be delivering a written proposal to purchase Planet Fitness by September 14, 2012.

h.  On September 10 and 11, 2012, AGC Partners delivered to TSG initial due diligence responses and coordinated a further call between TSG principals and Planet Fitness' executive management.  This information was provided by Planet Fitness to AGC on the express understanding that AGC Partners was working closely with TSG toward a potential offer.

i.  On September 12, 2012, TSG submitted to AGC Partners, Planet Fitness and its counsel at Ropes & Gray an indication of interest to purchase Planet Fitness. TSG's indication of interest set a potential purchase price between $435 and $480 million.

20.     Each of AGC Partners' actions described were undertaken with the direct assent, approval and knowledge of Planet Fitness. These actions were undertaken on the explicit understanding and agreement between Planet Fitness and AGC Partners that should TSG ultimately purchase Planet Fitness, AGC Partners would receive its Strategic Transaction Fee.

21.     At the same time AGC Partners was soliciting interest in Planet Fitness from TSG, AGC Partners was pursuing a similar dialog with several other potential purchasers. This process, AGC Partners correctly surmised, would result in driving the sale process and maximizing the potential purchase price.

22.     By September 14, 2012, AGC Partners had solicited and received six proposed letters of intent for Planet Fitness to evaluate. One of the letters of intent procured by AGC Partners was from TSG.

23.     To further facilitate the sale process, AGC coordinated an in-person board discussion at Planet Fitness' offices in New Hampshire on September 17th. Present at this critical meeting were members of Planet Fitness' executive management team and several AGC Partners' representatives. At the meeting were the following attendees: Mike Grondahl, Marc Grondahl, Chris Rondeau, Richard Moore, David Kirkpatrick, Craig Benson, Dan Wheelock, Ben Howe, Russ Workman, Lenny Li and Jason Coppersmith.

24.     During this meeting, AGC Partners and Planet Fitness' executive management solidified the sales plan going forward and agreed that AGC Partners would continue to lead the process, including a direct dialog with TSG. The parties set a goal of receiving final bids from all potential purchasers by October 4, 2012. Planet Fitness and AGC Partners agreed that they would then select a single party with which to complete due diligence and ultimately close a transaction before year end. During the meeting, AGC Partners and Planet Fitness specifically

discussed the potential sale opportunity with TSG and Planet Fitness enthusiastically encouraged AGC Partners to continue to drive the sale process forward with them.

25.     Thereafter, AGC Partners worked with TSG to confirm the timing, participants, and agenda for a series of management meetings and a dinner to be held between TSG and Planet Fitness on September 20, 2012.

26.     So too, AGC Partners continued to advise Planet Fitness throughout the negotiation process with TSG by providing suggested revisions to the proposed Letter of Intent and the final bid letter.  These comments and suggestions were ultimately incorporated by Planet Fitness into the executed documents.  AGC Partners also continued an active dialogue with TSG's senior management regarding its intentions so as to pre-empt any disruptions in the sales process.

27.     On September 22, 2012, David Kirkpatrick left a voicemail for Ben Howe confirming that he spoke with Mike Grondahl, Craig Benson and Richard Moore, all Planet Fitness executives, and confirmed that Richard Moore had given the verbal approval to reach out to the additional firms, including TSG.

28.     On September 29, 2012, a $54 billion private equity firm that AGC Partners had engaged with and solicited interest in purchasing Planet Fitness, submitted a bid to purchase Planet Fitness for a proposed purchase price of approximately $500 million, which at the time was $30 million higher than TSG's bid of $470 million. AGC Partners' efforts in this regard directly induced TSG to raise their bid by $35 million, thus achieving the value AGC Partners had set out to accomplish at the commencement of its engagement.  A letter of intent setting forth a purchase price of $505 million was signed between Planet Fitness and TSG shortly thereafter.

29. AGC Partners diligently worked with and for Planet Fitness to deliver a half-billion dollar transaction where others who had tried to sell the business in the previous four years failed. AGC Partners fine-tuned Planet Fitness' story for the private equity market, used their contacts to approach the most logical private equity buyers, including TSG, and ultimately brought to Planet Fitness six quality written bids, one of which resulted in a sale. The AGC Partners team worked tirelessly with Planet Fitness' financial team to strengthen the presentation of the financials which ultimately served as the basis for bidders' valuations. AGC Partners oversaw and executed a picture-perfect auction process for Planet Fitness which brought to the table some of the most well-respected private equity buyers in the marketplace, some of whom had previously declined to engage in the sale process prior to AGC Partners' engagement.

30. AGC Partners forwarded to Planet Fitness an invoice for its services on October 5, 2012, several days after a letter of intent was signed with TSG. Upon receiving the invoice, Planet Fitness requested that AGC Partners calculate the Strategic Transaction Fee based upon the equity portion of TSG's offer or $480 million, not the full enterprise value offer made at $505 million and as required by the parties' agreement. Planet Fitness also asked AGC Partners to waive its right to recover out of pocket expenses and its retainer despite the parties' written agreement that the retainer and the expenses would be recovered upon the occurrence of Strategic Transaction. In an effort to compromise and proceed in good faith, AGC Partners agreed and submitted a revised invoice. Despite asking for and receiving the fee reduction, Planet Fitness failed to agree to pay the invoice. In fact, with the exception of the $50,000 retainer, Planet Fitness has failed to agree to pay any fee at all to AGC Partners despite its commitments, agreements and despite AGC Partners' hard work which brought about the sale.

## COUNT I
## Breach of Contract

31. AGC Partners' incorporates herein by reference all preceding paragraphs.

32. AGC Partners and Planet Fitness are parties to an Agreement dated August 16, 2012. As discussed above, Exhibit A to the Agreement was modified and such modification was confirmed verbally to include payment of a Strategic Transaction Fee in the event of a Strategic Transaction with TSG.

33. So too, in a written email dated August 15, 2012 as well as in multiple oral representations, Richard Moore and other Planet Fitness representatives specifically assured AGC that should a private equity entity like TSG emerge as a player, they would be added to the list from which AGC would be entitled to a 0.75% Strategic Transaction Fee. The act of actually placing them on the list was merely a ministerial act and Planet Fitness' failure to do so is reflects a breach of the contract.

34. AGC Partners successfully fulfilled its obligations under the Agreement.

35. Planet Fitness has breached the Agreement by failing and refusing to pay AGC Partners a Strategic Transaction Fee.

36. As a result of Planet Fitness' breach, AGC Partners has suffered damages, including attorneys' fees and costs which are specifically recoverable under the terms of the parties' Agreement.

## COUNT II
## Breach of the Implied Covenant of Good Faith and Fair Dealing

37. AGC Partners incorporates herein by reference all preceding paragraphs.

38. There exists an implied covenant of good faith and fair dealing with regard to the agreements and dealings between AGC Partners and Planet Fitness inherent in every Massachusetts contract.

39. As described above, Planet Fitness has breached the covenants of good faith and fair dealing by, among other things, requesting specific services from AGC Partners and refusing to pay for those services in an attempt to spoil AGC Partners right to recover for its past provided services.

40. In a written email dated August 15, 2012 as well as in multiple oral representations, Richard Moore and other Planet Fitness representatives specifically assured AGC that should a private equity entity like TSG emerge as a player, they would be added to the list from which AGC would be entitled to a 0.75% Strategic Transaction Fee. The act of actually placing them in writing on the list was merely a ministerial act and Planet Fitness' failure to do so is reflects a breach of the covenant of good faith and fair dealing.

41. AGC Partners has suffered substantial damages as a direct and proximate result of Planet Fitness' breaches of the covenants of good faith and fair dealing.

### COUNT III
### Unjust Enrichment

42. AGC Partners incorporates herein by reference all preceding paragraphs.

43. Planet Fitness has received substantial services from AGC Partners. Said services directly resulted in Planet Fitness being sold for $505 million. Planet Fitness has been unjustly enriched at the expense of AGC Partners by receiving substantial services and not paying for them.

44. AGC Partners has been damaged by Planet Fitness' misconduct.

## COUNT IV
### Quantum Meruit

45.     AGC Partners incorporates herein by reference all preceding paragraphs.

46.     AGC Partners has fully and satisfactorily performed all services requested of it by Planet Fitness.

47.     Planet Fitness has breached its obligations owed to AGC Partners by failing and refusing to pay outstanding amounts due under the parties' understandings and agreements.

48.     As a result of Planet Fitness' failure to pay AGC Partners for the services provided, AGC Partners has been damaged and is entitled to the fair value for the services which it provided at the direction of Planet Fitness.

## COUNT V
### Massachusetts General Laws, Chapter 93A, § 11

49.     AGC Partners incorporates herein by reference all preceding paragraphs.

50.     Planet Fitness' acts and omissions described above were unfair and deceptive and violative of Massachusetts General Laws, Chapter 93A.

51.     Planet Fitness and AGC Partners were, at all relevant times, engaged in the conduct of trade or commerce.

52.     Planet Fitness' unfair and deceptive acts and practices occurred substantially within the Commonwealth of Massachusetts.

53.     Planet Fitness' actions reflect willful and knowing violations of G.L. ch. 93A, § 2.

54.     Planet Fitness' unfair and deceptive conduct is described above but particularly include Planet Fitness' written and verbal conduct in which Richard Moore and other Planet Fitness representatives specifically assured AGC that should a private equity entity like TSG emerge as a player, they would be added to the list from which AGC would be entitled to a

0.75% Strategic Transaction Fee.  The act of actually placing them in writing on the list was merely a ministerial act and reflects Planet Fitness' knowing and intentional violation of Chapter 93A.

55. As a result of Planet Fitness' violations of G.L. ch. 93A, § 11, AGC Partners has suffered damages, and is entitled to, inter alia, up to three, but not less than two, times its actual damages, reasonable attorneys' fees, and other costs of this litigation.

## COUNT VI
## Fraudulent Inducement

56. AGC Partners incorporates herein by reference all preceding paragraphs.

57. As described above, Planet Fitness made numerous misrepresentations to AGC Partners which were designed to encourage and entice AGC Partners to cultivate, develop and ultimately procure an offer to purchase Planet Fitness from TSG.  AGC Partners proceeded with TSG on a potential purchase opportunity on the express representation that it would earn a Strategic Transaction Fee upon the sale of the Company to TSG.

58. AGC Partners reasonably relied to its detriment on these representations.

59. These representations were knowingly false or made with reckless disregard for the truth.

60. As a result of the false representations, AGC Partners suffered significant damages.

## COUNT VII
## Negligent Misrepresentation

61. AGC Partners incorporates herein by reference all preceding paragraphs.

62. As described above, Planet Fitness made numerous misrepresentations to AGC Partners, each of which was designed to encourage and entice AGC Partners to cultivate, develop

and ultimately procure an offer to purchase Planet Fitness from TSG.  AGC Partners proceeded with TSG on a potential purchase opportunity on the express representation that it would earn a Strategic Transaction Fee upon the sale of the Company to TSG.

63. AGC Partners reasonably relied to its detriment on these representations.

64. Planet Fitness made these misrepresentations without exercising reasonable care or competence in obtaining or communicating this information to AGC Partners.

65. As a result of the negligent misrepresentations, AGC Partners suffered significant damages.

## PRAYER FOR RELIEF

WHEREFORE, America's Growth Capital, LLC d/b/a AGC Partners requests that this Court grant the following relief:

i. Enter judgment in its favor on all counts of the respective claims for relief as set forth in the Complaint above, with accompanying damages awarded in an amount to be proven at trial under applicable statutory and/or common law;

ii. Treble damages and award attorneys' fees in accordance with Massachusetts General Laws Chapter 93A;

iii. Award attorneys' fees as provided by the parties' contract;

iv. Award pre- and post-judgment interest as allowed by law;

v. Reach the funds being held by the Reach and Apply Defendant for the benefit of Planet Fitness and apply them to any judgment rendered by this Court.

vi. Award recoverable costs associated with this lawsuit; and

vii. Grant such other and further relief as this Court deems just and proper.

        Respectfully submitted,

        AMERICA'S GROWTH CAPITAL, LLC d/b/a
        AGC PARTNERS

        By its attorneys,

        __/s/ J. Owen Todd_____
        J. Owen Todd (BBO #499480)
        jotodd@toddweld.com
        David H. Rich (BBO #634275)
        drich@toddweld.com
        Todd & Weld LLP
        28 State Street, 31st Floor
        Boston, MA  02109
        (617) 720-2626

Dated:  November 8, 2012